## BENTLEY, SHRIVER & CO. *vs.* CHARLES L. EDWARDS.

*Appeal—Exceptions—Inconsistent Instructions to Jury—Fellow Servant—Driver of Wagon Furnished by a Job Master Not a Fellow Servant With Employee of Hirer—Evidence.*

When the defendant's exception is taken only to the refusal of certain prayers offered by him, the action of the Court in granting the plaintiff's prayers is not open to review on appeal.

When no exception is taken to an instruction of the trial Court that the plaintiff is entitled to recover if the jury find certain facts, prayers offered by the defendant instructing the jury that upon the same evidence their verdict must be for the defendant, will be held upon appeal to have been properly refused.

When the facts are undisputed the question whether certain men were fellow servants of a common employer is a question of law for the Court.

The general rule is that when one furnishes to a hirer a wagon or carriage and also the driver thereof, such driver remains the servant of the owner, with whom his contract of employment was made.

Plaintiff was employed to drive a truck by the owner, being paid by him and taking his general orders from him. This owner agreed to furnish the defendants with a truck for a certain weekly sum, and plaintiff was directed by his employer to do the work the defendants required. The only directions he received from defendants was to carry goods from one place and unload them at another. *Held*, that the plaintiff was not a fellow servant with drivers employed directly by the defendants, and if he is injured by the negligence of one of these in the course of his employment, the defendants are liable therefor.

In an action to recover for injuries caused by the negligence of defendants servant, where it is held that the plaintiff was not a fellow servant with defendant's employee, the defendant is not injured by the rejection of evidence as to the latter's skill, and as to the other matters which could only be pertinent upon the theory that the plaintiff was such fellow servant.

When the question is whether or not one party was the servant of another, an offer to prove that the latter considered that the former was his servant, without stating the facts from which that inference was drawn, is properly refused.

Appeal from the Baltimore City Court (HARLAN, C. J.), where there was a judgment on verdict for the plaintiff for $800.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alfred Jenkins Shriver* and *Dallett H. Wilson*, for the appellants.

*M. Star Weil*, for the appellee.

JONES, J., delivered the opinion of the Court.

In this case the appellee, the plaintiff below, sued the appellants, defendants below, in the Baltimore City Court to recover damages for injuries received by the appellee from an accident caused by the alleged negligence of an employee and servant of the appellants. From a judgment rendered against them in the Court below in such suit the appellants have

brought this appeal.    At the trial of the case below seven exceptions were taken by the appellants to rulings of the Court upon offers of testimony and one to the action of the Court in rejecting certain instructions proposed on their behalf for submission to the jury; and certain others which sought to withdraw the case from the consideration of the jury.

The appellants carry on in the city of Baltimore a wholesale grocery business in premises situated on South street in said city.   This street runs north and south and the premises of the appellants are on the west side of the street.   On the opposite or east side of the street are the premises occupied by the Maryland Candy Company.   The plaintiff's employment is that of a driver of a truck; and on the day of the accident in question he hauled from one of the depots of the city a load, consisting of cases and barrels, to the premises of the candy company for delivery to said company, driving his truck, according to his testimony, "right up to the curb" in front of these premises on South street—his truck facing south.   Having reported to the shipping clerk of the candy company, and received instuction from him to "unload this load where he then was," he went back to his truck, got upon and crossed over the foot-board; then, putting his right foot on the foot-board and the left on the hub of the right front wheel, was proceeding to untie a rope, with which it had been necessary for him to secure his load upon the truck, in "the customary way and the way in which he always did it," when, as he alleges and testifies, he was struck by a heavily laden truck approaching from the south, which he had not seen, and which, by reason of having his back to the direction from which it approached, he could not see, and thus received the injuries of which he complains.

The appellants, in connection with their business, have trucks and drays in use for hauling goods to and from their place of business as occasion may require, and the drivers of the vehicles so used are among their regular employees.   It is in evidence that the truck which, the plaintiff alleges, struck and injured him as described, belonged to the appellants and

was at the time of the accident in charge of, and being driven by, one Winfield Carpenter, a regular driver for, and a servant of, the appellants.    There is some contradiction in the evidence as to how the accident happened, it being testified on behalf of the appellee that he was knocked from his position by the passing truck, and on behalf of the appellants that he jumped to the ground and was then caught by the vehicle driven by Carpenter.    There is practically no dispute as to the other facts that have been mentioned as in evidence.  This is as far as reference need be made to the evidence in the case until we have disposed of the eighth exception, the one taken to the action of the Court upon the prayers.    At the conclusion of the testimony the plaintiff (appellee) asked of the Court two instructions to the jury and the defendants (appellants) ten.    The Court granted both of the instructions asked for by the plaintiff and the first and second of those asked for by the defendants.    As to the others of the defendants' prayers the record states "the Court refused the defendants' third, fourth, fifth, sixth seventh, eighth, ninth and tenth prayers. Wherefore the defendants prayed leave to except and did except to the action of the Court in refusing said prayers and each of them."·    This is the only exception to the Courts action on the prayers; and this will now be considered.

In the first prayer of the plaintiff the Court instructed the jury that the plaintiff was entitled to recover if they should find that at the time of the accident the plaintiff was, "using due care and prudence; " that he was injured by being struck by a truck belonging to the defendants "while being driven by Carpenter; that Carpenter was at the time in the service of the defendants and acting in the course of his employment; " and that the plaintiff was "struck, thrown down and injured by reason of the want, on the part of the said  *  *  *  Carpenter of such ordinary care and prudence as drivers of ordinary care and prudence exercise under similar circumstances in driving along a thorougfare such as they may find the one in question to have been."    In the plaintiff's second instruction the jury were informed as to the allowance of damages

in case they found for the plaintiff. By the first prayer of the defendants the jury were instructed that in order to recover the plaintiff must prove "that the defendants or their driver had been guilty of some act of negligence, and that by their act or omission have violated some duty incumbent upon them which has caused the injury complained of;" and that the defendants were "not responsible for injuries resulting from unavoidable accident." And by defendants' second prayer that the plaintiff could not recover if the jury believed "that want of ordinary care and prudence on his part contributed to the injuries he received." If the instructions granted by the lower Court are open to criticism in any respect they cannot be reviewed on this appeal because the record does not disclose that any exception was taken to the action of that Court in respect to them, and does not therefore present here any question of their propriety.

We come now to the rejected prayers of the appellants as to which the action of the trial Court is brought up for review by their eighth exception. Of these prayers the fourth and sixth asked the Court to rule that the plaintiff was not entitled to recover because of there being an insufficiency of evidence to support a recovery; and the seventh asked the Court to so rule by reason of the state of the evidence as to contributory negligence on the part of the plaintiff. Manifestly if the trial Court was right in granting the plaintiff's prayers, the prayers of the appellants, to which particular reference has just been made, were properly refused. The plaintiff's prayers could only have been granted upon the assumption that there was a state of evidence that it was proper to submit to the jury as a basis for the plaintiff to recover; and of course the Court could not tell the jury that upon that same state of evidence the plaintiff could not recover at all. For the reasons already given we must assume, upon this record, that the action of the trial Court in granting the plaintiff's prayers was correct; and as a necessary consequence of that the rejection of the fourth, sixth and seventh of the appellants' prayers must be affirmed. While it is not necessary to give

further reasons for an affirmance of the action of the trial Court as to the prayers of the appellants, which have just been considered, it may be proper to add that the evidence set out in the record has been carefully examined in this connection, and has not been found to warrant such instructions.

We think also that all of the remaining prayers of the appellants were properly rejected. They are all constructed upon the theory of the plaintiff being at the time of the accident here in question a servant of the appellants and a fellow servant of the driver of their truck through whose alleged negligence the accident occurred. The fifth prayer asks the Court to say as a matter of law from the evidence that the plaintiff and the said driver (Carpenter) were fellow servants. To have granted such an instruction would have been in direct contravention of admitted facts and other uncontradicted evidence appearing in the case.

As all other questions to be passed upon here arise in this aspect of the case we may as well examine now the evidence bearing upon it. This is to the effect that in the fall of 1902 plaintiff was driving a team for William H. Burmeister, whose business it was to hire out teams; That he was employed by Burmeister to drive a team which Burmeister furnished to the Maryland Candy Company; that the team so furnished to the candy company was first driven by Burmeister's son and then by the plaintiff who was paid by Burmeister. That on Saturday evening next preceding the day of the accident the shipping clerk of the Maryland Candy Company, having received a notice from the railroad company that there was some freight for the candy company at the depot, gave the notice with some money to the plaintiff with instructions to go for the freight the first thing Monday morning following; that the plaintiff took his team to Burmeister's stable and gave the notice and money to Burmeister, who kept them, and told him (Burmeister) that he, the plaintiff, was told to bring the freight in on Monday. On Monday morning following, the plaintiff reported to Burmeister, received from him the notice and money for freight charges, went to the depot, loaded his

wagon with a couple cases and some barrels and drove with the load to the premises of the Maryland Candy Company. Then followed what has already been set out. The plaintiff reported to the shipping clerk of the candy company; was told to unload where his truck was; and upon his proceeding to unload the accident by which he was injured occurred as has been described. What has been stated appears in the testimony of the plaintiff when as a witness he was examined in chief. Upon cross-examination he further said that he was employed by Burmeister who took him to the Maryland Candy Company; that he never saw any of the persons connected with the operation of the business of that concern until he went there to drive; that "it was understood that he was to do generally whatever he was told to do by them, that is to haul what he was told to haul;" that he was doing a little hauling for them just two weeks before the accident occurred; that, on one or two occasions, he was sent to the grocery department of the appellants across the street from the candy factory "to get a couple of packages or something that had to go on the load;" that he did not remember what it was he went over there for or when it was, but "went over there to get some few packages that had to go to the boat or railroad wharf consigned to go and they went with" his load; that he got orders from a Mr. Jackson, who he understood was, and who was, manager of the concern (candy factory), and Mr. Bird, who was the shipping clerk; and "that he had not received any pay of any kind from the candy company but that he got his wages from Mr. Burmeister."

The foregoing is the only evidence in the record tending to define the relations of the plaintiff (appellee) to the appellants in the service in which he was engaged at the time of the accident in question, and there is no contradiction of it; nor is there evidence tending to contradict it. The question raised by the prayers under consideration is, whose service was the plaintiff in when the accident occurred which produced the injuries? And the proposition is asserted in these prayers, as matter of law, that he was at the time the servant of the

appellants and therefore a fellow servant with their driver, Carpenter, whose negligence is alleged to have caused the accident. As there is no contradiction of the facts upon which this question here depends it becomes a question of law to be determined by the Court. *Nor. & West. Rd. Co.* v. *Hoover*, 79 Md. 253; *Yates* v. *McCullough Iron Co.*, 69 Md. 370; *Hall* v. *Poole*, 94 Md. 171.

The appellants allege, and tendered evidence to show, that the candy company is a branch of their business and under their control and management through employees in their service; and in treating the question here raised the identity of the candy factory with the appellants will be assumed. The following facts appear as admitted, or at least as entirely uncontradicted, that the plaintiff when he undertook to do hauling for the candy factory was in the employment and pay of Burmeisier, was the latter's servant and as such was sent in charge of the truck hired by Burmeister to the candy factory to do the hauling which he was engaged in at the time of the accident to him; and during the time he was doing the hauling he was drawing his wages from Burmeister and was receiving no pay for the services rendered from the candy factory. Under these circumstances there can be no doubt that Burmeister was the general employer of the plaintiff. From this the presumption arises that the plaintiff when sent by his master, in his pay, to take charge of the truck hired to the candy factory for the service indicated remained the servant of Burmeister. "The mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign, as the master is sometimes called in the old books." *Driscoll* v. *Towle*, 181 Mass. 416. The proposition laid down is distinctly supported by the late case in this Court of *Sacker* v. *Waddell*, 98 Md. 43, in which is adopted what was said in the course of the notes to case of *Hardy* v. *Shedden*, 37 L. R. A. 1, at p. 71, that the

theory "which is now established by an overwhelming weight of authority, is that a servant sent to take charge of a chattel owned by his master, while it is placed at the disposal of another party for the performance of a given piece of work, is presumed to remain the servant of his general employer, and that some special circumstances apart from the mere fact of the hiring of the chattel must be put in evidence in order to overcome this presumption. The leading cases upon this doctrine are those known as the "Carriage Cases." Among the last-mentioned cases is that of *Quarman* v. *Burnett*, 6 Mees. & Welsby, 499, a leading case, and which, in the case of *Deford* v. *Keyser*, 30 Md. 179, is said, in the course of the exhaustive opinion of JUDGE ALVEY in that case, to be the one "in which the present approved doctrine" in regard "to the true distinctions applicable to cases of the class" to which that and the present case belong, "was first definitely established."

This case has become familiar but the facts may be profitably recited here as affording light in which to discuss the facts of the present case and as an aid in giving them proper effect. The defendants in the case were two ladies who kept a carriage of their own, but hired horses and a coachman from a job mistress. They generally had the same horses and always the same coachman to whom they paid two shillings for each drive, having told him when they first began using their own carriage, which was about three years before the accident which was the ground of the suit, that they would pay him that sum. He received regular weekly wages from the job mistress. The defendants sometimes took the coachman and horses into the country for several weeks, when they paid him a certain sum per week. They had a coachman's coat and a livery hat, for which the coachman was measured, and which he wore when driving the defendants and took off on his return to their house, where the coat and hat were hung up in the passage. On the day of the accident there in question he went into the defendants' house to take off his hat (the coat not having been worn by him on that day), and left no one in charge of the horses; they started off, and ran against the

plaintiff's chaise causing the injury for which the suit was brought. In the course of the judgment rendered in the case PARKE, B., said: "The liability, by virtue of the principle of master and servant, must cease where the relation itself ceases to exist; and no other person than the master of such servant can be liable, on the simple ground that the servant is the servant of another, and his act the act of another; consequently a third person entering into a contract with the master, which does not raise the relation of master and servant at all, is not thereby rendered liable, and to make such person liable, recourse must be had to a different and more extended principle, namely, that a person is liable not only for the acts of his own servant, but for any injury which arises by the act of another person, in carrying into execution that which that other person has contracted to do for his own benefit. That however is too large a position." Again he says: "it is undoubtedly true that there may be special circumstances which may render the hirer of job horses and servants responsible for the neglect of a servant, though not liable by virtue of the general relation of master and servant. He may become so by his own conduct, as by taking the actual management of the horses, or ordering the servant to drive in a particular manner, which occasions the damages complained of, or to absent himself at one particular moment and the like." And again, "that person is undoubtedly liable, who stood in the relation of master to the wrong doer, he who had selected him as his servant, from the knowledge of or belief in his skill and care, and who could remove him for misconduct, and whose orders he was bound to receive and obey."

This, as defining the relation of master and servant, is in agreement with what was said by this Court in the case of *Deford* v. *Keyser, supra*, where the same doctrine is expressed in this language, "Whether in the case before us, the parties engaged in the erection of the wall that fell, were the servants of Deford depends upon the control and direction that he could rightfully exercise over them. If they were at his command and bound to obey his orders and directions, in regard

to the work they were engaged in, and could be, at any time he thought proper, discharged by him, then they were his servants." In the cases cited reference will be found to other cases enforcing the principles therein enunciated; and others might be cited but it is unnecessary to, here, make further citations. It is sufficient to find that our own Courts have fully adopted the principles formulated in the language that has been quoted. We have only to apply them to the facts before us in the case at bar.

So far as the question here depends on circumstances more immediately connected with the happenings of the accident in question—that is the occurrences that took place on the day of the accident and which preceded it, when considered apart from other evidence, it would seem there can be no difficulty in determining whose servant the plaintiff was—under whose authority and direction he was acting. When on Saturday evening he received from the shipping clerk the notice of the freight being at the depot and was told to haul it on Monday morning he reported to Burmeister, his master, and delivered to him the notice and the money for the freight charges. Before attempting to do anything at all on Monday morning following he again reported to his master and then was given the notice and money for the freight and was sent to haul the articles to which the notice had reference. When he had hauled them to the premises of the candy company the only instructions given him there was where to unload the articles. When the plaintiff reported to Burmeister on the Monday morning in question whose instructions was he bound to obey —those he had received from the shipping clerk or such as he should receive from Burmeister? Can there be any question that Burmeister could rightfully have sent him to do other hauling or directed him to do no hauling at all, and have sent his son, or some other driver to haul the freight for the candy company? Could this company have complained if this had been done? Would the plaintiff have been responsible to the company because he did not do, and some one else did, the hauling in question? If Burnmeister had directed the plain-

tiff not to do the hauling at all and no one was sent to do it, who would have been responsible to the candy company, the plaintiff or Burmeister? Would not the latter have been responsible to the candy company for any negligence of the plaintiff in doing the hauling whereby the company sustained loss from injury to the goods? Who would have been responsible for injuries occasioned by the negligence of the plaintiff in driving from the premises of Burmeister to those of the candy company? There can be but one answer to any of these questions and that answer would make the plaintiff, in the transaction in question, the servant of Burmeister.

This was not changed nor affected by any instruction of the shipping clerk merely informing the plaintiff where to deposit his load. That these instructions should have any such effect would be against common sense as well as against the authorities which have been cited. Nor is the question to be answered differently as to the effect of any other evidence appearing in this connection. The plaintiff said that when he was taken to the candy company by Burmeister it was understood he was to do what he was told to do by Mr. Jackson and Mr. Bird, *"that is to haul what he was told to haul."* It was necessary for the plaintiff to receive instructions of this sort in doing his master's business—in performing the contract his master had made with the candy company. As PARKE, B., said in the case of *Quarman* v. *Burnett, supra,* "in carrying into execution that which that other person (his master) had contracted to do for his benefit." There is nothing to show that any instructions given were of any other character or had any other significance. The fact that the plaintiff had been doing the hauling testified to for two weeks has in itself no significance in the circumstances of this case. There is nothing to show that it was done in any different way from that which has been particularly referred to. The result is that the evidence is not found to disclose any special circumstances to overcome the presumption that the plaintiff while doing the hauling in question remained the servant of his general employer and was such at the time of the accident; and not the servant of

the appellants. This will be emphasized by a comparison of the circumstances in evidence in this case and those upon which the judgment in the case of *Quarman* v. *Burnett, supra,* was based. It follows that there was no evidence to warrant the defendant's fifth prayer nor any of those submitted on the theory of the plaintiff being, at the time of the accident, here in question, the fellow servant of the driver of the appellants whose alleged negligence caused the accident—being, besides the fifth, the third, eighth, ninth and tenth.

The exceptions to the rulings of the trial Court upon the defendants' offers of evidence remain to be considered. Of these the sixth and seventh were rulings rejecting proffered evidence of the skill and experience of Carpenter as a driver and related to the theory of Carpenter being a fellow servant of the plaintiff, the questions assuming that such relation existed between them. As what has been said in treating of the prayers eliminates that theory from the case it is obvious that, in the state of case disclosed by the record, the appellants sustained no injury from these rulings. It is not necessary to notice other reasons for the propriety of them which a different state of record would have made it necessary or appropriate to discuss. As to the evidence offered and rejected as set out in the first, second, third and fourth exceptions it is to be observed that it was all offered on the cross-examination of the plaintiff. The plaintiff, as a witness, when examined in chief, had not testified to anything to make the questions asked on cross-examination, and set out in the exceptions, just referred to, legitimate cross-examination. On that ground alone the rulings may properly be affirmed. But in addition to this technical ground of affirmance it may be said that the offers of evidence set out in the exceptions in question all seem to have had for their object the showing that the candy factory was part and parcel of the business of the appellants, and was under their control and management. As we are dealing with the case, as we have said, upon the assumption of the identity of the candy factory with the appellants the latter will not be prejudiced by the rulings in question.

This leaves only the fifth exception to be disposed of, in re-
gard to which it may be said, it is not made entirely clear
what the specific ruling of the Court was which is the subject
of the exception.  The appellants produced a witness (Mc-
Cabe), in regard to whom the record states in the outset of
his testimony; "witness testified subject to exception."  Then
follows his testimony which is principally explanatory of the
relations between the appellants and the candy factory, going
to show that the latter is only a branch, and part and parcel
of the business of the appellants; that the employees of the
candy factory are employees of the appellants; and that the
drivers and employees of the two departments of the appel-
lants' business acted interchangeably in the business of one or
the other as occasion might require.  He gave some further
testimony as to how the employees of the candy factory were
paid according to a list of the names sent into the office with
the amounts due, &c.; but said he did not remember plain-
tiff's name as being on the list.  The record then, after refer-
ring to the preceding bills of exceptions as being made a part
of this, states that "at the express request of the Court" the
defendants counsel "submitted the following offer of additional
proof offered as follows."  Then immediately follows the
question to the witness, McCabe, whose testimony has just
been summarized; and who was the book-keeper of the ap-
pellants.  "Was Mr. Edwards (meaining the plaintiff), an em-
ployee of your firm?"  The Court intimated that this was not
a proper question and asked if it was expected to follow it up
by proving that the plaintiff drew pay directly from this fac-
tory.  To this counsel answered "no."  The Court then
asked the further question if it was proposed to show that the
contract for his pay was made with the plaintiff and counsel
again answered no.  Whereupon the Court said "I think all
this evidence is inadmissible" and suggested to counsel to state
his offer of proof.  This, counsel, then proceeded to do.  The
greater part of the offer of proof, which followed, was directed
to the object of showing the relationship of the candy factory
to the business of the appellants and that the employees of the

candy factory and of the grocery business of the appellants were under the same management and subject to the orders of the appellants and acted interchangeably in the business of the respective departments as occasion required. As we are dealing with the case upon the assumption, as has heretofore been said, of the identity of the candy factory with the business of the appellants it makes no difference here whether the Court intended to exclude this proof from the case or not. In our view its being taken as in the case does not help the contention of the appellants and it need not be further considered.

Other parts of the offer of proof in question were that the plaintiff "was subject to the orders and took and executed the orders of the employees" of the appellants "and especially of Mr. Jackson and Mr. Bird who were at the candy factory;" that the employees of the candy factory and the grocery department of the appellants knew that they were under the supervision and ultimate control and authority of the appellants; that the regular drivers of the trucks of the appellants hauled all the goods of the candy department, except during the busy season when they secured an additional truck and that the plaintiff was the driver of this additional truck; that the plaintiff not only hauled for the candy department, as he testified, but he hauled goods directly from the grocery department of the appellants to the depots; that Carpenter, whose alleged negligence caused the plaintiff's injuries, was employed directly by the appellants and also hauled goods for the candy company; that he and the plaintiff were subject to a common authority bound to obey common orders and were ultimately paid by the same master although it will appear that this truck (which plaintiff drove) "was hired from Burmeister, for the price of $15 a week," and that the money was paid by appellants "through Mr. Jackson of the candy department," and that the plaintiff was paid out of that sum and "indirectly paid" by appellants. The Court then inquired if it was proposed to show that there was ever any contract of employment made between the plaintiff and the defendants, or

that any wages were ever paid as such employee.   To this it was answered that it was proposed to prove the plaintiff was always considered as an employee but not that any money was ever directly paid him by the appellants.   The counsel further stated in answer to an inquiry from the Court that it was not proposed to prove there was ever any contract or agreement between the plaintiff and appellants as to his receiving wages.   Again in response to an inquiry from the Court counsel said it was proposed to prove that the appellants had the right to command the plaintiff's services as they chose, and discharge him whenever they saw fit—to discharge him and the truck or him by himself.   The Court then announced that it sustained "the objection to the offer of proof."

We cannot see that there was any reversible error in this action of the Court.   The offer of proof upon behalf of the appellants was confined to the objects for which proof was to be offered.   The object of proof or evidence is one thing. Whether evidence proper, material and competent is offered for that object is quite another thing.   If we suppose the judgment here reversed on the exception now being considered and the case sent back to be retried we should be totally in the dark as to whether the appellants have a single tangible fact or circumstance which could be offered as going to establish the ultimate and resulting facts that are set out in their offer of proof.   Whether the plaintiff was "an employee" of the appellants; whether he and Carpenter were subject to a common authority; and whether the appellants had a right to command the plaintiff as they saw fit and to discharge him when they pleased were not, in themselves, independent facts; but were resulting or ultimate facts which could only be ascertained by a knowledge of facts and circumstances pointing to such conclusions.   A variety of facts must often be taken into consideration to reach such conclusions.   1 *Thompson on Neg.*, sec. 616, p. 564.   In the offer of proof these facts and circumstances ought to have appeared and not merely the conclusions from them which the appellants had chosen to draw.   That the plaintiff executed orders for the appellants

and hauled for them were facts that proved nothing without anything more in connection with them.   That was what he was hired to them by his master to do.   These were acts incident to the contract his master had made with the appellants and appeared in his own testimony.   It was utterly immaterial that he was considered as an employee by the appellants unless they had a right to so consider him and whether they had the right depended on the circumstances affecting their relations.   That he was paid ultimately by the appellants because they paid Burmeister and Burmeister paid him scarcely needs comment.

As the case developed in the trial below the question was whether the plaintiff was the servant, at the time the accident in question occurred of the appellants or the servant of Burmeiser.   Facts are admitted on the face of the record that show us at the time he went to perform service for the appellants Burmeister was his regular employer and his general master and that the service he undertook for the appellants was to carry out a contract that Burmeister had made with the appellants.   As we have seen he could only become or be treated as the servant of the appellants in the course of rendering such service · upon showing special circumstances indicating the new relation.   There is nowhere to be found in the offer of the testimony we are considering a suggestion of any such circumstances as it was incumbent on the appellants to show. The learned Judge below was right in confining the testimony to the actual issue and in not submitting to the jury testimony that could only have been confusing and misleading.   For reasons assigned the judgment below will be affirmed.

*Judgment affirmed with costs to appellee.*

(Decided March 23rd, 1905.)