(Decided 21st January, 1887.)

---

THE PHILADELPHIA, WILMINGTON AND BALTIMORE
RAILROAD COMPANY, and THE UNION RAILROAD
COMPANY *vs.* STATE OF MARYLAND, use of HAR-
MAN GUNTHER.

*Action of Damages—Negligence—Contributory negligence—
Erroneous instruction.*

In an action to recover damages for the death of the infant son of the equitable plaintiff, alleged to have been caused by the negligence of the defendants, it is error to instruct the jury that if they find that the accident occurred by the wilful act, default or negligence of the defendants, or either of them, or of their servants, then the jury may find for the plaintiff. The error of the instruc tion consists in the entire omission to require the jury to pass upon the question of the contributory negligence of the equitable plaintiff.

Nor is the error of the instruction rectified and rendered harmless by an instruction that unless the accident producing the injury com-

plained of, was caused solely by the negligence of the defendants,. or some of their agents, the verdict should be for the defendants.

The defendants were entitled to have the jury specifically instructed as to the legal effect of the evidence relied on to prove that the equitable plaintiff had been guilty of such contributory negligence as would, by the established rules of law, defeat the claim of the plaintiff to recover.

APPEAL from the Baltimore City Court.

This was an action brought under the statute, in the name of the State, to recover damages for the death of the minor son of the equitable plaintiff, Harman Gunther, alleged to have been caused by the negligence of the appellants. The calamity happened at the crossing of the Philadelphia turnpike by the Union Railroad, at grade. The Union Railroad Company is the owner of a line of railroad from a point near Union Station in the City of Baltimore to Bayview, where it connects with the line of the Philadelphia, Wilmington and Baltimore Railroad Company, which runs its trains over the line of the former company. On the 6th of October, 1885, the equitable plaintiff, who lives in Baltimore County, having been to Baltimore to market, was driving home by the Philadelphia turnpike in an open wagon, with his infant son, How- ard Gunther, and came to the neighborhood of the cross- ing between four and five in the afternoon. The day had been rainy, but it was beginning to clear. Gunther at- tempted to cross the track, and in doing so came in colli- sion with the engine of the approaching train, and he and his son were thrown out of the wagon, and the latter died shortly after from the injuries received. The evidence was conflicting.

*Exception.*—The plaintiff offered four prayers, the first of which, as follows, was granted in connection with the defendants' eighth prayer, and the others were refused :

Phila., Wilm. & Balto. R. R. Co., *et al. vs.* State, use of Gunther.

1. If the jury find that on the afternoon, about sunset, of the 6th October, 1885, Howard Gunther, an infant under the age of twenty-one years, while crossing the railroad of the Union Railroad Company upon the Baltimore and Havre de Grace Turnpike road, in a wagon driven by his father, the equitable plaintiff in this suit, if the jury find that said Howard was the son of the said equitable plaintiff as stated in the declaration, was run into and killed by a locomotive and train of cars of the Philadelphia, Wilmington and Baltimore Company, and that his death was occasioned by the wilful act, default or negligence of the defendants, or of either of them, or of the servant or servants of the defendants, or of either of them, then the jury may find for the plaintiff against said defendants, if the jury believe both defendants were in default or negligent, or against that one of the defendants which they believe to have been in default or negligent in the premises, with such damages as they may think proportioned to the injury resulting from such death of said Howard to said equitable plaintiff.

The defendants offered eight prayers, as follows:

1. The burden of proof is upon the plaintiff to show that the injuries complained of were caused by the defendants or their agents, and that but for such negligence the collision complained of would not have occurred; and unless the jury shall believe from the preponderance of testimony, that the death of the minor son of the equitable plaintiff was caused solely by the negligence of defendants, or some of their agents, the verdict of the jury must be for the defendants.

2. That if the jury shall believe from the evidence that the equitable plaintiff, Harman Gunther, was well acquainted with the crossing where the injury complained of happened, and the approaches thereto, and their surroundings, and that a person driving towards said crossing on the public road from Baltimore City, after getting to the

city side of 11th street, can hear trains approaching from Baltimore City to said crossing until he reaches the crossing, and from that point till he crosses 11th street, has a clear view of trains so approaching, after they reach 11th street, and that from 11th street to the crossing, a person so driving can, except at a few points, see a train so approaching with sufficient distinctness to be aware that something is approaching on the railroad track from that direction; and that if Harman Gunther, on the day in question, had looked and listened, he would have been aware of the approach of the train in time to avoid the danger, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant.

3. That if the jury shall find from the evidence that Harman Gunther was well acquainted with the crossing in question, and its surroundings, and that between 11th street and the crossing on the north side of the turnpike road, there is a hedge that somewhat obstructs the view of trains approaching the crossing from Baltimore City, to persons driving along the turnpike, but that such persons, by stopping and looking through the hedge, can, except at a few points, distinguish through the same trains approaching from Baltimore after they leave Canton Junction, a point 1637 feet away from the crossing, and that if Gunther had done so he could have seen the train mentioned in this case approaching in time to have avoided the accident, and that he did not do so, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendants.

4. That if the jury shall find from the evidence, that the equitable plaintiff, Harman Gunther, was in the habit of driving along the Philadelphia Turnpike road, and across the line of the Union Railroad, where the same crosses the turnpike, at least once or twice a week, and that there was always a flagman on duty at the crossing

to warn travellers on the turnpike of approaching trains, and that it was the habit of the. flagman, when a train was approaching, to leave his box and go to a point in the turnpike just east of the railroad track, and from there to give warning of the approach of such train, and that said Harman Gunther knew that such was the habit of the flagman, and that just before the accident mentioned in this case happened, and when said Harman Gunther was still so far away from the crossing that he could have stopped his team with perfect safety until the train which struck him had gone by, (if the jury shall so find,) said Harman Gunther saw the flagman come out from his box and go to such position east of the track, then this was in itself a warning of danger to said Harman Gunther, and it was his duty to stop until he had reasonable ground to suppose that it was safe for him to cross, and if the jury believe that had he done so, the injury complained of would not have happened, and shall further find that he did not do so, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendants.

5. That if the jury shall find from the evidence that the horses that Harman Gunther was driving, approached the crossing at a walk, and to all appearance entirely under the control of the driver, and that the flagman, after he had taken his position east of the track, (if the jury shall find that he took such position,) so saw them, and that when he saw them they were still far enough from the crossing to be stopped with perfect safety, and while they were still at such a distance, the flagman warned the driver, then it was not the duty of the flagman to suppose that the driver would disregard his warning and endeavor to cross, and it was not his duty to leave his position for the purpose of trying to stop the team, and if the jury shall find that the driver disregarded his warning and attempted to cross, and the team was struck

while he was so doing, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendants, notwithstanding that the jury may believe that if the flagman had left his position for the purpose of trying to stop the team, the accident might have been prevented.

6. That if the jury shall believe from the evidence, that when the equitable plaintiff was some one hundred and fifty feet away from the crossing, the flagman warned him of the approach of the train, and that he thereupon stopped his team, and that he afterwards started his team toward the crossing, and that when he had got within about fifteen or twenty feet of the crossing, the flagman again warned him, and he again stopped, and that afterwards he started again and attempted to drive across the tracks, and in so doing his team was struck by the train, then the plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendants.

7. That if the jury shall find from the evidence, that the equitable plaintiff, Harman Gunther, was in the habit of driving at least once or twice a week backward and forward over the crossing mentioned in this case, and that the line of railroad there belonged to the Union Railroad Company, and that that company kept a flagman at the crossing to warn persons travelling the carriage road of the approach of trains, and that said Harman Gunther knew that there was usually a flagman there for that purpose, and that the flagman was on duty at that crossing at the time of the accident mentioned in this case, and that it was not usual for trains approaching said crossing to whistle after leaving a point a short distance north of Canton Junction, and that Canton Junction is sixteen hundred and thirty-seven feet north of said crossing, and that on the afternoon of the day in question, a train of the Philadelphia, Wilmington and Baltimore Railroad Company, which left Union Station, in the City of Baltimore,

at about 5.15 p. m., struck a team driven by said Harman Gunther, in which he was with his minor son, Howard Gunther, and that his said minor son was killed, and that those in charge of said train blew the whistle a short time before reaching Canton Junction, and from that point until the train struck the team at the crossing, continuously rang the bell of the engine, then the plaintiff is not entitled to recover against the Philadelphia, Wilmington and Baltimore Railroad Company, and the verdict of the jury must be not guilty as to that defendant, notwithstanding that the jury may further find from the evidence that those in charge of said train did not blow the whistle between Canton Junction and said crossing, and notwithstanding the jury may also believe that the flagman did not exercise ordinary and reasonable care in warning Gunther of the approach of the train.

8. That if the jury find a verdict for the plaintiff, in assessing the damages, they are not to take into consideration the mental pain and suffering of the equitable plaintiff, in consequence of the death of the child, and are not to give against the defendants punitive, vindictive or exemplary damages, but in estimating the damages they are confined to the pecuniary damage sustained by the plaintiff, and are to give to him such a sum as the jury may believe from all the evidence in the case will be an adequate compensation for the loss of his son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years.

The Court (STEWART, J.,) granted the defendants' first, fifth and eighth prayers, and rejected their second, third, fourth, sixth and seventh prayers. To the rejection by the Court of their second, third, fourth, sixth and seventh prayers, and each of them, and to the granting of the plaintiff's first prayer, the defendants excepted.

The defendants also specially excepted to the plaintiff's prayers, and each of them, because there was no legally sufficient evidence to sustain them or any of them.

The jury gave a verdict for the plaintiff for $500, and judgment was entered thereon. The defendants appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*John J. Donaldson*, and *Bernard Carter*, for the appellants.

*Julian I. Alexander*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

In this case, there is but a single exception, and that was taken by the defendants to the granting by the Court of the plaintiff's first prayer, and the rejection by the Court of the second, third, fourth, sixth and seventh prayers of the defendants. The defendants made special exception to the plaintiff's first and other prayers, upon the ground that there was no evidence *legally* sufficient to support them; but as to the first of those prayers the objection was overruled.

We have examined carefully the evidence set out in the record, and are of opinion that there was evidence *legally* sufficient to require the case to be submitted to the jury. We shall not, however, enter into any recital of the facts; but whether the accident was occasioned by the negligence of the defendants' agents exclusively, if by their negligence at all, or by that of the equitable plaintiff alone, or by the negligence of the defendants' agents and that of the equitable plaintiff operating concurrently, were questions proper for the jury to determine, under all the facts of the case.

But while the Court was correct in overruling the objection to the legal sufficiency of the evidence, we are of opinion that there was error committed in granting the first prayer offered on the part of the plaintiff. By that

prayer, the jury were instructed that if they found that the accident occurred by the willful act, default or negligence of the defendants, or either of them, or of their servants, then the jury might find for the plaintiff, with such damages, &c.  As an abstract proposition, the prayer is correct enough, but in view of the evidence it is faulty.  The error of the instruction consists in the entire omission to require the jury to pass upon the question of the contributory negligence of the equitable plaintiff. The evidence reflecting upon that question was entirely ignored by the terms of the instruction, and yet the jury were told that they could find for the plaintiff upon the inculpatory facts stated in the prayer.  This was calculated to mislead, to say the least of it.  As the prayer was intended to present the case to the jury in such form, and upon such hypothesis of fact, as would entitle the plaintiff to recover, irrespective of everything else in the case, it should have embraced the inquiry into the question of the contributory negligence of the equitable plaintiff; as the finding upon that question might have been a complete bar to any right of the plaintiff to recover, notwithstanding the inculpatory facts stated as the basis of the instruction.  It is because of this omission that the first prayer of the plaintiff was erroneously granted.

It is argued, however, that the error of this instruction was rectified and rendered harmless, by the terms of the first prayer on the part of the defendants, which was granted.  But we do not think so.  By that prayer of the defendants, the jury were instructed as to the *onus* of proof of negligence to render the defendants liable, and that unless the accident producing the injury complained of was caused solely by the negligence of the defendants, the verdict should be for the defendants.  But this instruction makes no specific reference whatever to any of the facts relied on to establish the existence of contributory negligence on the part of the equitable plaintiff.  In

regard to that, the jury were left wholly uninstructed. The defendants were entitled to have the jury specifically instructed as to the legal effect of the evidence relied on to prove that the equitable plaintiff had been guilty of such contributory negligence as would, by the established rules of law, defeat the claim of the plaintiff to recover. And such instructions were sought by the second, third, fourth and sixth prayers offered by the defendants, but which were rejected by the Court. We, however, fail to perceive any good reason why those prayers should not have been granted. If it be true, as stated in those prayers, that all the conditions and surroundings of the crossing were well known and familiar to the equitable plaintiff, and that the approach of the train to the crossing could have been easily seen or heard by him, in time to have avoided the accident, and he failed to exercise reasonable precaution in that respect; or that the flagman stationed at the crossing gave the usual and well understood signal of the approach of the train, which was seen by the equitable plaintiff, but was not heeded by him, and he, notwithstanding such signal, persisted in his attempt to cross the tracks of the road; then, clearly, the plaintiff would not be entitled to recover. But, on the other hand, if the equitable plaintiff was really misled by any such misconduct of the flagman as was calculated to mislead a rational person, in the exercise of reasonable care, under all the circumstances of the case, and that, by reason of the fact that he was so misled, the accident occurred, then the right of action would exist, and the plaintiff would be entitled to recover. These questions of fact the prayers of the defendants proposed to submit to the jury, and we think correctly; as upon their determination would depend the liability of the defendants. In regard to the seventh prayer of the defendants, it is open to some objection, and the Court committed no error in rejecting it.

This Court, within the last few years, has had repeated occasions to pass upon the questions involved in this case; and, in those cases, the legal principles applicable here are fully stated. We therefore deem it unnecessary to repeat those principles in this case. The last case upon the subject, in which the principles of law applicable to this class of cases are fully stated, is that of *Phil., W. & B. R. Co. vs. Hogeland, ante p.,* 149, in which some of the preceding but recent cases in this Court are referred to ; and we think the second, third, fourth and sixth prayers of the defendants are fully embraced and supported by those decisions.

We must, therefore, reverse the judgment of the Court below, and remand the case for a new trial.

*Judgment reversed, and
new trial awarded.*

(Decided 28th January, 1887.)