The plaintiff in a suit for damages for personal injuries appeals from a judgment for the defendant, entered on a verdict of a jury upon evidence on behalf of both parties and instructions by the court. Twenty-two exceptions were taken to rulings by the court on the admission of evidence, and one to rulings on prayers for instructions. The rulings on admission of evidence have all been examined in the light of the *Page 472 
arguments, but found to present no reversible error; and as they have involved no questions of general importance, and no retrial will be had in the case, it is deemed undesirable to include a discussion of them in the opinion. The discussion will be confined to rulings on prayers for instructions to the jury.
Damico, a resident of Baltimore, on a visit to friends in Annapolis, left the house of his friends to take a train at what is called the Short Line Station, to leave for Baltimore at 9.40 P.M. He allowed himself little time, and reached the station close to the time of departure. According to evidence on behalf of the defendant, he reached it after his train had left, and attempted to enter instead cars not in service, but being shifted in the yard. On the details of the accident, in which he was injured, the testimony is in conflict.
The plaintiff's contention on the facts, on which he grounds a right of recovery for negligence of the defendant's agents, is that when he entered the station he saw two lighted cars standing on the track beside the platform, as if about to leave, that there was no dispatcher or other railway employee standing on or about the platform to direct him, and, assuming from the appearance of the cars before him that this was his train, he proceeded to mount the steps of one car, heard a voice, which he thought came from the forward part of the car, calling out that this was not the train he wanted, turned to get off, but was thrown off by a sudden starting of the car, without warning, and fell partly under the wheels. This was the effect of most of the evidence on behalf of the plaintiff. There was, however, some contradiction in his evidence; boys who had accompanied him to the station testified that, as the car was moving slowly off, the plaintiff was standing on the steps waving good-bye, and one boy, Frank Ristiano, said that then "it seemed as though he was aware he was on the wrong car and it looked like he jumped off," that he tried to get off. At that time another car or train was seen moving away about two hundred yards out of the station. The witnesses for the plaintiff agreed that, as they were about to enter *Page 473 
the station, the plaintiff and those with him heard a whistle blown. And some of his companions urged the plaintiff to hurry for fear of missing his car.
The defendant's witnesses testified that the 9.40 P.M. train left on time, when no further passengers were in sight, and had no accident. The cars which the plaintiff tried to take stood beside the platform nearly opposite the station, out of service for the night, with a light in only the forward car, with no passengers, and no employees of the company about except two car shifters, one on the front platform of the forward car, as they started, and one standing on the bumpers between the two cars. The one who had stood on the bumpers testified that he looked out and found that there was nobody else in sight except two men standing at the end of the platform talking, seemingly not moving at all. The cars did not blow a whistle until they were out in the yard. The car shifters knew nothing of the accident until told of it later. A taxicab driver testified that he saw the plaintiff running around the corner of the station after the 9.40 train had gone, and that he, the taxicab driver, called to the plaintiff that the train had gone. A physician and a nurse, called by the defendant, testified that the plaintiff, after his removal to the hospital at Annapolis, stated to them that he had tried to catch the car as it was leaving the station, jumped on it, and fell underneath the car.
On this conflicting evidence the plaintiff prayed two instructions, and both prayers were granted, while the defendant prayed sixteen, and six of these were granted. The plaintiff filed special exceptions to the granting of an eleventh prayer of the defendant's, and these exceptions were overruled. In the argument, objections were pressed on behalf of the appellant only to the granting of the defendant's fourth and eleventh prayers, and to the overruling of the special exceptions to the latter. And we see no error in other rulings on prayers.
On the fourth prayer, the court instructed the jury "that a carrier of passengers is not an insurer of their safety, and *Page 474 
for a mere accident unmixed with negligence, no action will lie, even though an injury has been done, and if the jury shall find from the evidence that there was no negligence on the part of the defendant, its agents and employees, then their verdict must be for the defendant." And the objections to this instruction are that it is too general and abstract for proper use in any case, and upon the facts in this particular case gives an inadequate and misleading guide to the jury. To these objections it seems to the court to be a sufficient answer that exactly the same instruction was held correct in the case of United Rwys. Co. v.Dean, 117 Md. 686, 691, 702, a suit by a passenger, and that it was substantially the same as instructions granted in the earlier cases of Balto. O.R. Co. v. Worthington, 21 Md. 275, 282, andStockton v. Frey, 4 Gill, 406, 416. It is, indeed, an instruction commonly given in suits by passengers. And we do not consider it too general and abstract to be a proper guide to the jury in this particular case. It is no more general than the many instructions given to define negligence for the jury. CentralRy. Co. v. Smith, 74 Md. 212, 217. And see fourth instruction granted for the plaintiff in Balto. O.R. Co. v. State, use ofHauer, 60 Md. 449, 452, 465. No error is found, therefore, in the granting of the defendant's fourth prayer in this case.
The instruction given the jury in the granting of the eleventh prayer of the defendant was that, if the jury should find from the evidence "that the plaintiff attempted to enter upon the car of the defendant when the said car was then in motion, and that the car was then being shifted and not in passenger service, and if the jury shall further find that the plaintiff knew, or by use of reasonable care could have known, that the said car was not then in passenger service, that the jury is instructed that the plaintiff did not become and was not a passenger, and consequently the only duty owing to the plaintiff by the defendant or its agent was to use ordinary care to avoid injuring him, after the defendant's agents knew, or by the exercise of reasonable care, should have known of the plaintiff's peril, and if the jury find that the defendant *Page 475 
and its agents used such care as a reasonably prudent man would have used under similar circumstances to avoid injuring the plaintiff, then their verdict must be for the defendant."
This is intended as an instruction on the degree of care required of the defendant, and is not to be confused with an instruction on contributory negligence. It concerns the measure of the defendant's duty, and what is termed primary negligence, to be settled before the question of contributory negligence is taken up. Compare Payne v. Springfield Street Ry. Co.,203 Mass. 425. And it instructs, upon principles applied in many suits against carriers, that a man attempting to enter, while it is in motion, a car not in passenger service, and one which he knows or by the exercise of ordinary care could know is not in service, does not then stand in the relation of a passenger, entitled to the exercise of the highest degree of care by the company's agents, but stands at best only in the position of a licensee, entitled to the care to be exercised toward licensees.Rhoades v. Boston Elevated Ry. Co., 232 Mass. 361; Trapnell v.Hines, 268 Fed. 504. Special exceptions were filed to this prayer because of a lack of evidence to support the findings of fact which it supposed the jury might make, that the plaintiff attempted to enter upon the car when it was in motion, and that the plaintiff then knew or by the exercise of care could have known that the car was not in passenger service. Special exception was taken also to the conclusion that the plaintiff would not, under the facts stated, be a passenger, but that was only a statement of the legal relation and measure of duty, and not of a fact to be found by the jury, and there would be no place for a special exception to this conclusion as well as those to the facts from which it was to be drawn. In the opinion of this court there was sufficient evidence for the findings of fact in the testimony of the plaintiff's statement in the hospital that he tried to catch the car as it was leaving the station, in that of the car shifters that when they started the cars there was no one on the platform except two men standing at the end of it, and in their testimony that only *Page 476 
the forward car of the two thus moving from the plaintiff was lighted, that all doors were closed except the front door of the forward car, and that there were no passengers in the cars, and no employees of the company about them except the two car shifters, one on the front platform of the forward car, and one standing on the bumpers between the cars, or in a closed vestibule next to it, that the time was after 9:40 P.M., and there were cars in sight departing from the station, about two hundred yards out. The special exceptions for lack of any evidence on these points were therefore properly overruled.
It is unquestionably true, speaking generally, that, while in the station for the purpose of taking a train, the plaintiff was in the position of a passenger in that he was entitled to the exercise of the highest degree of care by the carrier for his safety there. But the carrier is not held by the law to provide this extraordinary care in any situation which an intending passenger may create after he comes on the premises. If the carrier in fulfilment of its duty provides a safe and proper course for such persons to pursue, and they unexpectedly pursue other courses, they may put themselves outside the undertaking of the carrier. Wash. B. A.R. Co. v. State, use of Goodwin,140 Md. 115, 119. When a train is held at a stop awaiting passengers, there is a clear provision for taking on passengers, and an invitation to passengers to enter, and the higher degree of care is appropriate. But when the time for starting has arrived, and the train moves off, the invitation to enter is no longer held out. The train has ceased, and properly ceased, to make provision for entry of passengers at that station. "In legal contemplation the invitation of the railroad company to its passengers to board its trains, is withdrawn the very instant the train begins to move." 2 White, Personal Injuries on Railroads,
sec. 783. "If a person gets on a moving train after it has started, he is `outside of any implied invitation' on the part of the carrier, and does not at once acquire the rights of a passenger." Beale, 19 Harvard Law Review, 254. A person is not a passenger "who gets upon a railway train after *Page 477 
it has started and falls off before he gets to a place of safety inside." 3 Thompson, Negligence, sec. 2636. In each of the cases of Chaffee v. Old Colony R. Co., 17 R.I. 658, and Weeksv. New Orleans etc. R. Co. 40 La. Ann. 800, it was held that one who, after his train had started, proceeded over a track which had to be crossed to take it, and was struck by another train on that track then moving, was not in the position of a passenger, entitled to the degree of care appropriate to that relation. And compare Wash. B. A.R. Co. v. State, use of Goodwin, supra. In Palmer v. Willamette Co., 88 Oregon, 322, it was held that an intending passenger who delayed on a promise of the conductor to wait a minute if the minute was not too long, and who was injured while trying to catch the train after the conductor had started, was not in the position of a passenger. "When, therefore," said the court, "defendant started its train from the depot it withdrew its invitation to board the train." In May v.Chic. B. Q.R. Co., 284 Mo. 508, the court, replying to an argument against an instruction given to a jury, said: "If plaintiff had been belated, a possibility contrary to the hypothesis of the instruction, and had attempted to board the train at the very second of its starting, after it had stood at the station during an interval long enough for every person who intended to take passage to do so by acting with due diligence, it may be that she would not have occupied the status of passenger, for the reason that the implied agreement of the company to receive her as such would have expired." And seeKentucky Highlands Co. v. Creal, 166 Ky. 469; Ohio Miss. Co.v. Allender, 59 Ill. App. 620; and note L.R.A. 1916B 832. This has been the conclusion in cases in which it was a train intended for passengers, and on which passengers were invited to enter at the proper time and in the proper manner, that had been started off. Much more clearly would the same result follow when the moving cars were not intended for passengers at all, and no invitation to board had been given. To repeat, the instruction given here was for a finding by the jury that the plaintiff was attempting to *Page 478 
take a train not in service, and one which he knew or by the exercise of care could have known was not in service.
The case of Balto. Traction Co. v. State, use of Ringgold,78 Md. 409, referred to in argument, differed from the present one in presenting no question of interruption of the relation of carrier and passenger in a station. The court there had to deal with only a question of the beginning of the relation, whereas here the question is one of interruption of it. The statement in the opinion in the Ringgold case, page 427, that "the street was in no sense a passenger station for the safety of which the company is responsible," cannot be taken as a holding that, if the deceased had been improperly entering the car at a station, the preceding relation of carrier and passenger would have required of the company, even in a situation thus created, the higher degree of care due to passengers. The sentence quoted was taken from Booth, Street Railway Law, 445, on the duty of a carrier to keep its platforms and approaches in a safe condition. And the cases cited by this court on the statement were cases of injuries to persons who had been passengers, but had left the cars and were injured while walking away, one by another car and one by horses being brought around at the end of the line.
The defendant's eleventh prayer seems to the court, for the reasons here stated, to have been correctly granted in the case.
And no error being found in the rulings excepted to, the judgment will be affirmed.
Judgment affirmed, with costs to the appellee.