HILTON QUARRIES, INC., *v.* MACK McLAIN HALL.
[No. 47, October Term, 1931.]

520

*Decided January 13th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* for the appellant.

*Charles T. Le Viness, 3rd,* and *Rowland K. Adams,* with whom was *J. De Ford Weil* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from a judgment for damages for personal injuries sustained by a truck driver, alleged to have been struck by a box of crushed stone swung from a derrick in a quarry, as the stone was being loaded into the truck. The stone was to be hauled from the quarry under a contract between the quarrymen and the owner of the truck, who was the immediate employer of this driver. Compensation was awarded and paid the driver by the insurer of the truck owner, under the Workmen's Compensation Act, and the present suit has been brought over against the quarry owner

by the workman, for the use of himself and the insurer of his immediate employer. Code, art. 101, sec. 58. The exceptions pressed in this court are all to rulings upon prayers for instructions to the jury.

According to evidence presented, the Hilton Quarries, defendant, and now appellant, had a contract with William H. Schmeltz, an owner of trucks, whose regular business it was to contract for hauling stone and other loads, and Schmeltz sent Mack McLain Hall with a truck to do the work contracted for in this instance. All directions as to the details of loading and hauling away were given by the owner of the quarry to the driver, in so far as directions were needed. The loading was done by means of a stiff-legged derrick, with a boom fifty-five feet long, and stone contained in wooden boxes about four feet square was lowered to the truck; then, as the boxes rested suspended above the truck, they were swung into position by hand, and finally lowered into the truck body and released there. One side of the box would be opened and the box then raised away by means of the derrick. There was conflicting evidence on the position customarily or properly taken by the men who stood by at the truck to direct the stone. For the plaintiff, it was testified that it was customary and more convenient, if not necessary, for the truck driver to stand on the top of his driving cab and do this work, and that the position on top of the cab was a necessary one on this morning especially, because the derrick operator was then bringing the stone around across the cab to the truck. Witnesses on behalf of the defendant, on the other hand, testified that it was no part of the duties of the truck driver to assist in loading stone; that for any man who did that work, or who was at the truck, it was improper to stand on the cab, for that was a dangerous position; that he should stand on the running board, or on the ground; and that this truck driver had been warned several times to get off of the cab when stone was swinging around, and would not have been permitted to stand there at the time of the accident if the quarry foreman had seen him. The plaintiff denied having received such a warning. It was

while the plaintiff was standing on the cab that he was hurt. He testified that he was receiving a box of stone there as he regularly did, that ordinarily the derrick operator, who could see the truck, stopped the stone when it was over the cab; but that in this instance it continued to swing, contrary to expectations, struck the plaintiff on the head, and caused him to fall forward and to the side of the truck, upon a fender, and continued to drop, and dropped upon him and injured him. He testified that the boom of the derrick fell on the cab and damaged it; and, on the other hand, witnesses for the defendant testified that the boom did not fall so far, but that it was the box that struck the cab after the man had fallen off. And it was denied that the box fell on the man; some of the witnesses testifying that the broken cab fell on him. Witnesses on both sides appear to agree that the box of stone fell out of control for some distance. All of the conflicts of evidence on other points were, of course, for settlement by the jury.

As to the cause of the excessive swing and fall of the stone, the plaintiff produced no testimony except to the effect that a tooth had been broken out of a ratchet on the drum on the hoisting engine, and that this would cause the checking "dog," which falls between the teeth and holds the drum, to slip over the space left by its absence. That testimony merely suggested the break as a possible cause. It was not testified that in fact it did cause the fall in this instance, and, on the contrary, it was testified by the defendant's witnesses that it had no part in the accident, and that it is not a source of danger, because its utmost effect is only to cause the dog to move just so much further before it catches and holds against the next tooth. The court instructed the jury that there was no evidence in the case legally sufficient to prove that the broken cog had caused the accident; and in the appellee's brief the cause is taken to have been that stated in an explanation offered by the defendant's derrick operator, or engineer. Apparently part of that explanation was from observed fact, and part of it from inference or speculation. The regular fall of the derrick's load is controlled by a foot

brake beside the drum holding the cable which runs from the engine out on the boom for the lowering and raising, and the derrick man thinks that at the time of the accident he must have checked the fall too suddenly, by this foot brake, and caused a rebound of the load sufficient to make the dog jump out of the ratchet on the drum, and thus to permit the line to run out and drop the stone somewhat before it could be caught and stopped by the brake. The load did drop, he testified, but dropped only a short distance. This, the witness said, was a consequence that had never before happened in his experience. The result seems to have been one which he, at least, did not anticipate as likely. The evidence agrees that he was an operator of long experience. And no defect, other than the broken cog, was found in the hoisting machinery.

Five of the defendant's prayers sought a direction of a verdict for the defendant, because of insufficiency of proof of negligence on the part of defendant's servants, because of assumption of the risk of such an accident and injury by the plaintiff in taking up a dangerous position, because of his contributory negligence, and because it had not been shown which of two or more possible causes produced the accident. These prayers, we think, were all properly refused.

While, as has been said, the derrick operator's explanation seems to have been to some extent inferential, or speculative, this court concludes that the jury might find from it that his sudden manipulation of the foot brake did cause a rebound and momentary loss of control of the box of stone, and, given that finding, it would seem permissible for the jury as practical men to conclude that this too sudden action was not consistent with the exercise of ordinary care. And a duty of care toward the plaintiff in the swinging of the stone could be found from the testimony that it was part of his work to assist in loading. We do not therefore see that there is a legal insufficiency of evidence of negligence on the part of the defendant's servants.

Defenses of assumption by the plaintiff of the risk of injury, and of contributory negligence on his part, which are much relied on in the case, both refer to the effect of his

taking the position on the top of the cab of his truck, and are two aspects of the same contention: That in taking that position he, of his own volition, put himself within the dangers from which his injury resulted; and, having done so, cannot recover for the injury as brought upon him by a wrong of the defendant. In so far as it is contended that, merely by consciously taking the more dangerous of two possible positions, a visitor assumes the risk of injury in that position from any cause, this court disagrees, because the visitor might properly regard the position as attended with some dangers, yet not those from which injury comes to him, and might rightly be satisfied of his ability to cope with the former dangers, yet be justified in ignoring the other possible but unexpected dangers. He might be held bound to anticipate and so to assume dangers from operation in ordinary course, yet not to anticipate and assume the risk of rare casualties such as the derrick operator has described in this case, unless he occupies his position without the permission and contrary to the directions of the proprietor of the premises and the work. And in that connection, the evidence of the quarryman of his warnings and orders to the truck driver are to be considered.

The duty of the quarryman to exercise care looking to the safety of the visitor, the driver, could have been fulfilled, and the quarryman's own responsibility could at the same time have been limited, by restricting the driver to positions in which the risk of injury from casualties, even negligent casualties, might have been avoided. This may be clearer if it be supposed that the driver had shown a tendency to walk or stand under loads of stone as they were moved across the ground. The quarryman, with that situation before him, would have taken a legally unassailable position if he had declared in effect that, recognizing his obligation to exercise care for the safety of the visitor, and his liability for failure of his servants to exercise that care, he would fulfill that obligation by keeping the visitor out of danger even from accidents caused by the workmen, and would not assume responsibility for injury, even negligent injury, to a visitor

who defiantly and unnecessarily placed himself in such a dangerous position. It is true that the quarryman might still have been liable if he or his servants, knowing the peril of the visitor, should act in wanton disregard of it and cause injury, but we are not supposing such a case, and have no such case to deal with. We have a case of an accident free from any element of wantonness, and to that accident we apply the principle that the visitor would not be permitted, against the protest of the proprietor of the premises and the work, to create such an unnecessarily dangerous situation and still insist upon responsibility in the owner for injuries which might come to the visitor in his selected position. The risk would be upon the visitor, and, if the derrick operator should cause injury by a negligent slip of his foot as stated, the visitor would be barred from recovery by contributory negligence. The principle is illustrated in many cases of injuries to persons who have been lawfully upon the property of others but have placed themselves in unexpected or prohibited situations there. *Damico v. Wash., B. & A. R. Co.*, 158 Md. 470, 476, 148 A. 821; *Wash., B. & A. R. Co. v. State, use of Goodwin*, 140 Md. 115, 119, 116 A. 911; 3 *Shearman & Redfield, Negligence* (6th Ed.), sec. 704.

In the case of *Hall v. Poole*, 94 Md. 171, 50 A. 703, 704, cited during the argument, an electrician, sent to a store to repair an elevator bell, directed the elevator boy employed in the store to continue running his car up and down while he, the electrician, worked in the shaft underneath, and the boy, according to evidence given, negligently lowered the car and injured the electrician; and it was held to have been beyond the scope of the elevator boy's employment to engage in such a dangerous arrangement, and the proprietors of the store, who had not trusted the boy to deal with such dangerous possibilities, were held not liable for the injury which resulted from his dealing with them. The court, in the opinion, observed further that, "in order to avoid the danger, if they had been consulted in regard to the plaintiff going into the shaft, the defendants could have insisted upon the work being done in the safer way." And in this the court seems to have

referred to the same principle, that the proprietors of the establishment might, by forbidding the visitor to work in an unnecessarily dangerous position, decline to accept responsibility for injury to the visitor by a servant's negligence, if the visitor nevertheless chose to work in that position. And see *State v. Coal Co.,* 150 Md. 429, 448, 133 A. 601; *Cazzulo v. Holscher,* 261 Pa. 447, 104 A. 680; *Cary Bros. & Hannon v. Morrison* (C. C. A.), 129 F. 177, 65 L. R. A. 659; *Graetz v. McKenzie,* 9 Wash. 696, 35 P. 377. But this principle, while important for some of the exceptions taken in the present case, would not support the direction of a verdict for the defendants on the ground of assumption of the risk or of contributory negligence, because the evidence of the protest of the quarryman was disputed and the dispute could be settled only by the jury.

The instruction that the accident appeared to have been due to either of two possible causes, and the plaintiff had not produced proof to enable the jury to determine which was the cause, seems inapplicable in view of the explanation given by the derrick operator, from which the jury could have found the cause in detail. Such an instruction would be relevant only where there is no direct testimony to fix upon the cause.

There is a further argument, in support of these prayers for direction of a verdict for the defendant, that the plaintiff was in the position of a servant to the quarry owners because he had been transferred to their control, and that therefore the negligence of which he complains was that of a fellow servant, and his only right to compensation would be under the Workmen's Compensation Act. *Dippel v. Juliano,* 152 Md. 694, 698, 137 A. 514; *Salowitch v. Kres,* 147 Md. 23, 30, 127 A. 643. But we disagree with that view. The quarryman appears from the evidence to have had control only of the time and manner of getting the stone loaded. The truck owner, Schmeltz, was master for the carriage of the loads under his contract, and the general master of the truck driver, and, while the truck driver co-operated with the quarrymen in the loading of the trucks as they wished, he was simply receiving the loads to carry out Schmeltz's

contract of carriage. We see no sufficient ground for holding that his service was transferred. *American Sugar Ref. Co. v. Gilbert,* 145 Md. 251, 256, 257, 125 A. 692; *Hull v. Phila. & Reading Ry. Co.,* 132 Md. 540, 550, 104 A. 274; *Bentley, Shriver & Co. v. Edwards,* 100 Md. 652, 60 A. 283. As we have said, the prayers for direction of a verdict were, in our opinion, properly refused.

The plaintiff's first prayer for an instruction to the jury, which was granted, is objected to on the ground that it directed the jury to draw an inference of negligence on the defendant's part from too little foundation in facts, and that it instructed them that they might find a verdict for the plaintiff upon that inference although there was still a question whether the plaintiff had assumed the risk of injury or had been guilty of contributory negligence. Taking up the first objection, we find the instruction to be that if the jury find that the plaintiff was hauling for Schmeltz, and loading stone at the quarry as described, and the box of stone being swung over by the derrick struck the plaintiff and knocked him off the cab of the truck, and then dropped on the cab with sufficient force to break it, and the box or broken cab, or both, fell on the plaintiff and injured him, this would be *prima facie* proof of negligence on the defendant's part while moving the box of stone with the derrick and engine, and, unless on the whole evidence such *prima facie* evidence was rebutted, the verdict should be for the plaintiff. The court granted this in connection with a first prayer of the defendant for an instruction that the mere happening of an accident raises no presumption of negligence on the part of the defendant's servants, and the burden of proof rests upon the plaintiff to prove negligence by a fair preponderance of the evidence. This court is of opinion that the first objection to the plaintiff's prayer is well taken, for from the mere fact that the box of stone swung and fell out of control, with the consequences stated, an inference of negligence does not so certainly follow that the court could declare it to do so. Given the few facts stated in the prayer, it is still conceivable that the accident might be found not to have been caused

by negligence. Of course, if the jury accepted the explanation of the derrick operator, produced as a witness by the defendant, and, as has been stated, the appellee appears to find the cause given in that explanation, they had detailed facts to consider and measure by the test of due care, and might, we think, have found a lack of due care. If, accepting the explanation, they found no lack of due care in the facts stated, as perhaps they might not if the accident was one not likely to happen in ordinary experience, as the derrick operator's testimony suggested (*American Tobacco Co. v. Strickling,* 88 Md. 500, 41 A. 1083; *Joyce v. Flanigan,* 111 Md. 481, 497, 74 A. 818; *Weilbacher v. J. W. Putts Co.,* 123 Md. 249, 265, 91 A. 343; *Long Co. v. State Accident Fund,* 156 Md. 639, 652, 144 A.. 775), the jury would have had no concern with a presumption to the contrary. But we must consider the possibility that a jury of practical men would not accept the derrick operator's explanation, and that they might have to deal with a drop of the boom not explained to their satisfaction. They might disbelieve the derrickman's explanation. As has been pointed out, it seemed put forward as partly inferential or speculative, and, in addition, it was put forward as an explanation of a drop of the load for a distance shorter than was described by some witnesses. The instruction on the plaintiff's first prayer then gave the jury their guide for finding a verdict in the absence of satisfactory explanation in the evidence. It has been decided by this court in an earlier case that, when a hoisting apparatus is so managed in its ordinary operation that injury has been caused to pipes outside of the work being done, there is an inference of negligence in the management. *Chesapeake Iron Works v. Hochschild,* 119 Md. 303, 86 A. 345. The court had before it in that case one of the instances in which facts adduced, though not explaining the accident directly and explicitly, seem to contain an explanation in themselves and to give rise to an inference that the accident was due to negligence because, given the fact that the instrumentalities and movements are in the control of the operators, then such an accident does not ordinarily happen except as a

result of negligence of the operators. *Maryland Tel. Co. v. Cloman,* 97 Md. 620, 628, 55 A. 681; *Weilbacher v. J. W. Putts Co., supra.* But an unexplained fall out of control, the fact standing by itself in this instruction, may bespeak unexpected action or failure of machinery as well as failure of men, and the inclusion of the possibility of failure of machinery makes a different situation, because failure of machinery occurs at times without negligence of the men operating it. And that being true, something more than a drop of the derrick and its load must be shown to give rise to a presumption of negligence on the part of the men. Assuming that there is legally sufficient evidence of negligence, it must be left to the jury to determine whether the inference does arise. *Casparis Stone Co. v. Boncore,* 121 Md. 449, 454, 88 A. 250; *Eyre-Shoemaker Co. v. Mackin,* 116 Md. 58, 63, 81 A. 267. In this instance, we conclude, the instruction should have left it to the jury to determine whether the drop of the box of stone with all other facts in evidence gave sufficient foundation for a finding of negligence.

This defect in the instruction on the plaintiff's first prayer taken alone seems not to have been cured by reference to the general instruction, granted on the defendant's first prayer, that negligence could not be presumed from the mere happening of the accident, but must be proved. On the contrary, the more specific instruction on the plaintiff's prayer would seem to give application to the more general one. The result of the two combined would seem to have been an instruction that the mere happening of the accident did not give rise to a presumption of negligence, but if the fall of the load and injury were found, those facts would constitute the needed *prima facie* proof. And that, we think, is not correct.

As to the second objection to the plaintiff's prayer, there is no dispute on the simple principle of law involved. Even though the defendant's servants should be found to have been negligent as stated, contributory negligence on the plaintiff's part, if found to have existed, would prevent recovery. Instructions were given the jury, on prayers of the defendant, that contributory negligence would so prevent recovery, and

the plaintiff in argument concedes their correctness. But the question raised by the objection to the plaintiff's prayer is one of the effect of its being given as in itself a complete guide to a verdict for the plaintiff, without reference to the effect of contributory negligence or to the instructions given on contributory negligence. Should the court assume that the jury would read the instructions given on contributory negligence as qualifying the instruction on the plaintiff's prayer, or should the court assume that the jury would fail to read the two together without being instructed to do so, and take the plaintiff's prayer to be complete and all sufficient in itself, as it was not? In the case of *Philadelphia, W. & B. R. Co. v. State,* 66 Md. 501, 8 A. 272, the view was taken that such an instruction, unqualified by reference, in a clause or in another instruction, to the effect of contributory negligence, could not be properly given. And see *Pennsylvania R. Co. v. State,* 135 Md. 496, 504, 109 A. 321; *Washington, B. & A. R. Co. v. State,* 136 Md. 103, 111 A. 164; *Chiswell v. Nichols,* 137 Md. 291, 307, 112 A. 363. This result follows logically from the practice of giving separate instructions, each to be taken as complete in itself so far as it pretends to go, rather than giving connected charges to the jury. When an instruction on its face offers the jury a complete guide for arriving at a verdict for the plaintiff, and yet fails to provide for consideration of a defense which might still prevent that verdict, the jury would be likely to render a verdict on an erroneous foundation. "As the prayer," said Chief Judge Alvey, in *Philadelphia, W. & B. R. Co. v. State,* 66 Md. 509, 8 A. 272, "was intended to present the case to the jury in such form, and upon such hypothesis of fact, as would entitle the plaintiff to recover, irrespective of everything else in the case, it should have embraced the inquiry into the question of the contributory negligence of the equitable plaintiff, as the finding upon that question might have been a complete bar to any right of the plaintiff to recover, notwithstanding the inculpatory facts stated as the basis of the instruction. It is because of this omission that the first prayer * * * was erroneously granted." Upon this reasoning,

too, we conclude that the instruction on the plaintiff's first prayer in this case was erroneous.

Exception was taken to the refusal of instructions prayed by the defendant in prayers numbered 3, 3½, and 4, on the consideration to be given by the jury to the defense of assumption by the plaintiff of the risk of injury. The instructions asked were that if the plaintiff, in taking his position on top of the truck cab, took a position of greater danger than another which he might have taken for the work, and the greater danger was open and obvious, then he assumed the risk of injury and could not recover in his suit, and the verdict should be for the defendant. And the trial court, instead of granting these instructions as asked, prepared and gave two fuller instructions on that defense, drawing a distinction between dangers in the ordinary operation of the loading and dangers which might result from casual negligence of the operator of the derrick. Dangers from ordinary operation, the instructions were, might be found assumed by the truck driver, but dangers from the casual act of negligence were not assumed by taking the position. We find both the instructions prayed and the instructions given by the court erroneous; the instructions prayed erroneously stating that by merely taking consciously the more dangerous of two positions, without reference to any warning that the quarryman might be found to have given, the plaintiff would be prevented from recovering for injuries from even casual and unanticipated negligence of the derrick operator; and the court's instructions, on the other hand, erroneously stating that recovery might be had for negligence of the operator even if the truck driver defied the orders of the quarrymen in taking the position where the results of that negligence would reach him. As has been pointed out in this opinion, and as was also pointed out by the trial court, the truck driver, in taking the position, might be held to have assumed all the apparent dangers of operation in ordinary course, but could not be held to have anticipated casual negligence during the operation, in the absence at least of warning and orders from the quarryman against taking the position. And, on the other hand,

contrary to the instructions prepared by the court, the driver, if it was in defiance of a warning and protest of the quarryman that he was within reach of the results of negligence, could not recover, as has already been explained in this opinion.

*Judgment reversed, and a new trial awarded, with costs to the appellant.*