BALTIMORE & ANNAPOLIS RAILROAD COMPANY
*v.* JEROME M. LICHTENBERG ET AL.
PUBLIC SERVICE COMMISSION *v.* SAME.

[Nos. 47, 48, January Term, 1939.]

384

*Decided March 8th, 1939.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*J. Purdon Wright,* for the Public Service Commission, appellant.

*Edgar Allan Poe,* for the Baltimore & Annapolis Railroad Company, appellant.

*Albert J. Goodman,* for Jerome M. and Evelyn E. Lichtenberg, and Vernon Snyder, appellees.

*Bernard J. Flynn, United States' Attorney,* with whom were *T. Barton Harrington, Assistant United States' Attorney,* and *Enoch E. Ellison, Attorney, Department of Justice,* on the brief, for the United States, appellee.

BOND, C. J., delivered the opinion of the Court.

Complaint was made to the Public Service Commission by the Baltimore & Annapolis Railroad Company, under the Code (Supp. 1935), art. 56, sec. 255A, that the appellees were engaging in the carriage of day laborers in motor trucks over the highways of the state between Baltimore and Annapolis, under contract with the United States Government, without compliance with the statutes governing contract carriers, and were thus subjecting the railroad to unrestricted and unregulated competiton in the territory served by it. Code (Supp. 1935), art. 56, secs. 251 and 252. The commission, after having heard the parties, stated its findings to be that the owners of the trucks were acting as independent contractors engaged in intrastate transportation without the required permits, and without conformity of the trucks to the commission's safety regulations, and because of these facts the operation complained of was ordered stopped. Competition with the service of the railroad, which is necessary, and maintained with difficulty, was found, but the order of the commission was not explicitly placed on that ground.

In due course the carriers filed their bill of complaint to prevent enforcement of the order because unreasonable and unlawful. Code (Supp. 1935), art. 23, sec. 359. And

by leave of court the Federal Government intervened as a party complainant, and the railroad company intervened as a respondent. Testimony taken before the commission was supplemented by further testimony in court, and upon all the evidence the chancellor, differing with the commission, decided that the single and exclusive contract shown, for a comparatively short, limited, period, was not such a transportation of passengers as was intended to be controlled by the statutes cited, and that the regulation or stoppage sought would be an unconstitutional obstruction by the State of the performance of an essential function of the Federal Government. Competition with the railroad was found to be only partial, because the men were carried to and from work on projects at various distances from and beyond the railroad stations about Annapolis, and therefore, although the parties had stipulated that the case should be completely disposed of, without a remand to the commission (Code, art. 23, sec. 405), the chancellor considered himself required to remand it to enable the commission to give separate consideration to those parts of the transportation which were not competitive. On the ground that the remand suspended the proceedings below, rendering them incomplete and not ready for review, a motion to dismiss the appeals has been filed.

The Federal Government has been engaged in constructing buildings at sites near Annapolis on both sides of the Severn River, some near the railroad, some on the north side as far as four miles distant. As the Government required that men otherwise unemployed, and on government relief, be used, and there was no adequate supply of such men nearby, the Federal Works Progress Administration has been furnishing them from Baltimore to be carried to the work and back each day, and for the transportation of those men to and fro in motor trucks the contract was made with the appellees, owners of the trucks, under date of July 29th, 1938. These owners have otherwise no regular course of business in transportation of passengers; they have only merchan-

dise trucks, and their activity which is complained of has arisen solely under the contract, and it is to end with the work on the projects, in no event later than June 30th, 1939.

A standard form of government contract was used. The truck owners were required by it to furnish the necessary number of vehicles to carry forty men per vehicle for twelve dollars a day for each vehicle, or sixty men for eighteen dollars, to make the round trip each working day, from a specified gathering point, or pick-up point, in Baltimore, to the sites of the work and return. Hours of movement were designated, but were varied in practice for convenience of the men and the work. When weather conditions interfered with the work, the men would not be carried. It was expressly provided that the contractors should comply with the law in equipping the vehicles, obtaining all required licenses and permits, and should carry liability insurance. But there has been no attempt by the appellees to qualify as carriers of passengers by obtaining the licenses specified in the Code (Supp. 1935), art. 56, secs. 251, 252, and 255. They have only licenses for commercial hiring. As many as 1500 men a day have been carried under the contract, in trucks such as are commonly used for carrying freight or merchandise, with closed front and sides, and open back, with the men seated on wooden benches.

After the passage of the commission's order on the complaint, bids for the transportation of the men were invited from the railroad company and many trucking and bus companies, but only one bid, and that for the hauling of 750 men, was received. The Government, therefore, returned to its existing contract, and the equity proceeding to preserve it.

Before the contract was made, the railroad company had offered to carry the workmen between Baltimore and its Annapolis stations at the rate of forty-five cents for each passenger. Carriage by that means would, of course, have necessitated employment of trucks to distribute and gather the men at the Annapolis end of the journey. A

limit placed by the government agencies upon the Navy Department's expenditures for the transportation of laborers would have prevented acceptance of that rate, but the fact seems to furnish no answer to the questions to be solved, for supplying too little money for employing carriers qualified under the law would not, as we conceive it, authorize bringing into operation on the highways, by the contract, a system of conveyance outside the law. The fact leaves unaffected the question whether this system is within or without the law; and the question is to be answered in the same way whether the funds supplied are inadequate or ample.

That the appellees have been acting as independent private contract carriers seems to the court plain. Besides owning the trucks, and equipping and insuring them as owners, they have had their own employees driving them. The facts that the operation is for the benefit and convenience of the Government exclusively, and that the Government has fixed the times of movement and the extent of the journey, do not alter the fact of independence of the contractors. *Bentley, Shriver & Co. v. Edwards,* 100 Md. 652, 60 A. 283; *Hull v. Philadelphia & R. R. Co.,* 132 Md. 540, 104 A. 274; *Hilton Quarries v. Hall,* 161 Md. 518, 158 A. 19. And a foremost question is whether such contractors come at all within the description of those to be affected by sections 252 and 251 of article 56 of the Code (Supp. 1935). "All motor vehicles," reads section 252, "except when used exclusively for the transportation of pupils to and from public and/or private schools, operating for hire intrastate over the improved roads and streets of this State * * * on regular schedules or between fixed termini, * * * shall be subject to the provisions of this sub-title * * * except that the public duties of a common carrier shall not thereby be imposed on the owner of any such vehicle not actually engaged in public transportation." It was by an Act of 1927, chapter 620, that this section was inserted in the law. The requirements had previously been confined to owners of motor vehicles used in the "public intrastate

transportation of passengers for hire" (section 251) ; and the purpose described in the title of the new Act was to subject to the provisions of the motor vehicle license regulations "all motor vehicles operating for hire on regular schedules or between fixed termini, with certain exceptions." The inclusion was comprehensive, and specification of the exceptions precludes our making any other. *Vanderford v. Farmers' & Mechanics' Nat. Bank*, 105 Md. 164, 66 A. 47. That the duties of common carriers were expressly excepted from the effect of the section seems to indicate clearly enough that those using the roads with the vehicles for hire who were to be affected were private contract carriers. Unless, therefore, some part of the constitutions of the State or of the United States forbids, private contract carriers for hire, using the roads on fixed schedules or between fixed termini, are controlled by the statute.

If the regulations in the statute bear a conceivably reasonable relation to highway preservation and the safety of passengers carried, there would be no constitutional objection. *Continental Baking Co. v. Woodring*, 286 U. S. 352, 365, 52 S. Ct. 595, 76 L. Ed. 1155; *Stephenson v. Binford*, 287 U. S. 251, 271, 272, 53 S. Ct. 181, 77 L. Ed. 288; *Hicklin v. Coney*, 290 U. S. 169, 54 S. Ct. 142, 78 L. Ed. 247; *Ogden & Moffett Co. v. Michigan Public Utilities Commn.* (D. C.), 58 Fed. 2nd 832; *New Way Lumber Co. v. Smith*, 128 Tex. 173, 96 S. W. 2nd 282; Review of decisions in 109 *A. L. R.* 550. The requirements stated in section 251 of article 56 are that a permit be secured from the commission to operate over the roads, that this permit be presented to the commissioner of motor vehicles, that application be made for registration, stating along with all other matters by law provided to be stated facts bearing on the extent of the use to be made of the roads in carrying passengers, and that a license fee computed by the State Roads Commission on the basis of that use be paid. And under section 255 the Public Service Commission must investigate the expediency of granting the permit, the number of vehicles to

be used, and the effect on the public welfare and convenience, and it is authorized to grant the permit subject to reasonable terms and conditions, and limits as to time. The carriage would also be subject to the rules promulgated by the commission, within its authority, for safe carriage of passengers and protection of the roads. These we consider reasonable requirements for safeguarding use of the highways for gain, and, properly applied, they would not be invalid. *Continental Baking Co. v. Woodring, supra.*

In the fact that the contract was a provision for definite, limited, work of one owner, the United States Government, to cease in eleven months at most, we find no reason for saving it from the operation from the statute. It was none the less a use of the roads of the state for hire, in carrying passengers. And there would, we think, be few, if any, private contracts for conveyance not limited to specific purposes and times, too few at least to permit us to suppose that the legislation was enacted to reach those only. See *Goldsworthy v. Public Service Commission,* 141 Md. 674, 680, 119 A. 693.

Operation "on regular schedules or between fixed termini" is defined in another section of the statutes concerning freight and merchandise carriage. Code (Supp. 1935), art. 56, sec. 173. "Regular schedule," which is to be construed liberally, "shall include the carriage of freight or merchandise of at least one single trip per week of four consecutive weeks between fixed termini, and if freight or merchandise is carried by any motor vehicle on the average of at least one single trip each week between fixed termini, such operation shall constitute a regular schedule." And "fixed termini," also to be liberally construed, "shall include any city, town, village, state line, county line, or city line or any other geographical point marking the beginning or the end of a carriage of goods * * * provided each termini is at least five miles apart." It is a principle of construction, based upon high probability, that such important words of definite meaning in one part of a statute are, in any other part, used with the same meaning. "Where the

same language is used in different clauses of the constitution, upon the same or similar subjects, it must receive the same construction, unless some particular reason to the contrary can be signed." *Roberts v. Gibson's Excr.*, 6 H. & J. 116; *School Commissioners v. Goldsborough,* 90 Md. 193, 202, 44 A. 1055; *Calvert County v. Monnett,* 164 Md. 101, 105, 164 A. 155. Conveyance on the morning and the evening of every working day, between Baltimore and the several naval grounds about Annapolis, would seem to conform to these definitions.

The conclusion of the court is that the operation by the appellees could not be carried on without compliance with the statutory provisions stated. An illustration of the need of some control of this use was before the commission in two protests by residents near the roadways used against a blocking of traffic by the appellees' large fleet of trucks, morning and evening.

That in regulating such a use the commission may, generally speaking, and so long as it does not require the owners to devote the vehicles to the public service, be guided by the effect of it on existing public service, seems settled. *Stephenson v. Binford,* 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288; *Rutledge Co-Operative Assn. v. Baughman,* 153 Md. 297, 138 A. 29; note 109 *A. L. R.* 550. When the highway service is similar to that of an existing railroad, and in competition with it, then, it seems, the State may refrain from supplying a free roadbed for the competition. But the court is of opinion in this instance that, in view of the necessity of distributing these workmen beyond the stations about Annapolis, and gathering them there again, and the necessity of bringing the supply of motor vehicles for it from Baltimore, it could not reasonably be held that carrying the men in vehicles to and from Baltimore would constitute competition with the service of the railroad, which was unnecessary and not demanded by convenience, and which should for that reason be forbidden. As the court sees it, complete stoppage of the road service could be grounded only on failure to comply with the requirements for use of the roads previously specified.

So much is without consideration of the objection that regulation or denial of permission to the appellees amounts to interference with performance of an essential governmental function. The court is of opinion that there is no such interference as is prohibited to the State by the United States Constitution. Only the use of the roads of the State by an independent contractor is dealt with. There is no interference with any governmental instrumentality. A private instrumentality is availed of by contract, its use of the roads for gain to be turned to the service of the Government. And, as already stated, the court sees no foundation for holding that the Government may, for its greater convenience or for the sake of economy, relieve the contractor of the obligation to conform to the law. Such an independent agency, engaged in its independent trade, must, in our opinion, be considered unchangeably subject to the law in its operation, whether it contracts for its services with the Government or with promoters of private enterprises. See *James v. Dravo Contracting Co.*, 302 U. S. 134, 149, 58 S. Ct. 208, 82 L. Ed. 155.

The conclusions so stated necessitate a reversal of the order of the chancellor, to the end that the appellees shall discontinue the service as ordered unless and until they comply with the law concerning the use of the roads by motor vehicles for hire.

The conclusion of the chancellor that a remand of the case to the commission was required in order that noncompetitive parts of the journey might be considered separately, has not been adopted by this court. Such competition as exists with the main part of the journey, we find, does not require consideration, and there would be no action for the commission to take on the remanded case. The case is ready for the final disposition stipulated for, and the motion to dismiss the appeals because of the remand, and consequent suspension of the proceedings, should be overruled.

*Motion to dismiss appeals overruled. Order reversed with costs.*