RAILROAD COMMISSION of Texas et al.,
Appellants,

v.

UNITED STATES of America et al.,
Appellees.

No. 10413.

Court of Civil Appeals of Texas.

Austin.

May 9, 1956.

Rehearing Denied May 23, 1956.

John Ben Shepperd, Atty. Gen., William W. Guild, Asst. Atty. Gen., for Railroad Commission of Texas at Austin.

Phillip Robinson, Zollie Steakley, Austin, Smith & Steakley, Austin, of counsel, for A & A Transport, Inc., et al.

Ewell H. Muse, Jr., Morgan Nesbitt, Austin, for Texas Transport.

Wm. R. McDowell, Dallas, for Texas & Pacific Ry. and other railroads.

James E. Kilday, E. Riggs McConnell, Attys., Dept. of Justice, Washington, D. C., Stanley N. Barnes, Asst. Atty. Gen., Russell B. Wine, U. S. Atty., San Antonio, for appellee.

HUGHES, Justice.

This is a declaratory judgment proceeding in which the trial court declared the law to be:

"1. That the statutes of the State of Texas, construed in the light of existing Federal law, do not prohibit the United States of America, in the exercise of its constitutional functions, from negotiating and making arrangements for transportation of persons or property for the United States at fares and rates different from those prescribed by the Railroad Commission of Texas.

"2. That the statutes of the State of Texas, construed in the light of existing Federal Law, do not prohibit the intrastate carriage or transportation of persons or property for the United States of America by common carrier at fares and rates different from those prescribed by the Railroad Commission of Texas, when the carriage and transportation is for the United States of America in the exercise of its constitutional functions."

The controversy here was precipitated by an opinion of the Attorney General of Texas dated August 10, 1955, and directed to the Railroad Commission of Texas. We quote from such opinion:

"This office is of the opinion that the Commission's transportation rates are applicable to the intrastate shipment of goods for the United States (military) when the movement is conducted by independent contractors. The authorities relied upon by the former opinions of this office have been distinguished or overruled by subsequent cases; therefore, such opinions are overruled insofar as they conflict with this opinion."

The former opinions of the Attorney General, referred to as being overruled,

were by the late Honorable Wm. C. McCraw prepared by Assistant Attorney General Albert G. Walker dated April 13, 1938, and two by Honorable Gerald C. Mann, the first prepared by Assistant Attorney General Glenn R. Lewis, dated December 18, 1940, and the second prepared by Assistant Attorney General Davis W. Heath, dated May 10, 1943.

It thus appears that the present view of the Attorney General is opposed by seventeen years of departmental construction including the express opinions of Attorneys General McCraw and Mann and the acquiescence of intervening Attorneys General Grover Sellers and Price Daniel and the present Attorney General for more than two and one half of the seventeen years.

Seeking to sustain the law as declared by the trial court and so long observed with the express or implied approval of the State Attorney General are appellees the United States Government, the Texas and Pacific Railway Company and twelve other railroad companies. Opposed are appellants the Railroad Commission of Texas, the Attorney General of Texas, Texas Motor Common Carriers and numerous common carrier motor carriers.

The view of the former Attorneys General in the opinions above referred to is that compulsory compliance by the Federal Government with transportation rates prescribed by the Commission would unreasonably interfere with the performance of duties enjoined upon the National Government.

In the opinion of Mr. Glenn R. Lewis for Attorney General Mann it is stated, after referring to federal statutes authorizing the execution of contracts for transportation of military supplies:

"The Congress has enjoined upon the officers of the Federal Government the duty to make such contracts, by statutes plainly evidencing an intent for such officers to obtain the most economical transportation as possible. The charges to be made for the service is a major factor in such contracts for carrier service. To allow the State to fix the rates and charges for the transportation service involved in these contracts would be to permit it to make the contract in large part. Such would constitute a direct interference with the Federal Government in its discharge of constitutional functions. The principles announced in such cases as Louwein v. Moody [Tex. Com.App.], 12 S.W.2d 989; Johnson v. [State of] Maryland, 254 U.S. 51, 41 S.Ct. 16 [65 L.Ed. 126]; Metcalf v. Mitchell, 269 U.S. 514 [46 S.Ct. 172], 70 L.Ed. 384; Panhandle Oil Co. v. [State of] Mississippi, 277 U.S. 218 [48 S.Ct. 451], 72 L.Ed. 857, are applicable."

The principal cases relied upon by the present Attorney General as undermining the authority of the previous opinions of former Attorneys General are: Penn Dairies v. Milk Control Commission, 1943, 318 U.S. 261, 63 S.Ct. 617, 87 L.Ed. 748; State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3; Baltimore & A. R. Co. v. Lichtenberg, 1939, 176 Md. 383, 4 A.2d 734; United States v. Baltimore & Annapolis R. Co., 308 U.S. 525, 60 S.Ct. 297, 84 L.Ed. 444, and Hughes Transportation Co. v. United States, 1954, 121 F.Supp. 212, 128 Ct.Cl. 221.

All of these opinions were prior to the last ruling of Attorney General Mann except the opinion in Hughes Transportation Company by the U. S. Court of Claims.

As to the last case all appellees concede that it is inconsistent with the positions taken by them herein and with the law as declared by the court below. They point out, however, that a motion to reopen that case has been granted and that they consider it reopened for all purposes, fact and law, and hence the opinion is no longer authoritative.

We have concluded that the judgment of the trial court should be affirmed and that in so doing it is unnecessary for us to pass upon the constitutionality of any statute.

The declaration of law by the trial court did not purport to invalidate any statute. It was, as we understand it, a construction of our statutes as including an implied exemption in favor of the United States or as holding that they are inapplicable to the United States.

We have carefully read the opinions of the former Attorneys General mentioned above and it is equally clear that they did not purport to declare the invalidity of any statute. They stress the inviolability of the constitutional functions, prerogatives and duties of the National Government and in citing Louwein v. Moody, Tex.Com. App., 12 S.W.2d 989, seem to proceed upon the premise that our statutes are inapplicable to the Federal Government. In that case the Court said:

> "If the Texas statute be applicable to Louwein in regard to his mail trucks, it makes penal use of those trucks in carrying the mail unless he first pay the 'fee' or 'tax.' Use of the trucks upon highways, and not ownership, is the subject-matter burdened. The cases cited, in our opinion, settle the matter of 'practical effect' as increasing the cost to the United States of execution of its power and duty (section 8, cl. 7, art. 1) to establish and operate post offices, etc., and that, too, in a way sufficiently direct as to be an interference with the free execution of that power.
>
> "Purpose to impose such a burden may not be attributed to the Legislature in the absence of compelling words. In our opinion, the statute (articles 6675, 6679) omits such words."

Our statutes [1] requiring uniform charges for like services by railway companies are general in expression. They do not name the United States as being subject to or exempt from their provisions.

We quote from United States v. Herron, 20 Wall. 251, 87 U.S. 251, 22 L.Ed. 275:

> "It is a maxim of the common law, said Savage, Ch. J., that when an Act of Parliament is passed for the public good, as for the advancement of religion and justice, or to prevent injury and wrong, the King shall be bound by such Act though not named, but when a statute is general and any prerogative, right, title or interest would be devested or taken from the King, in such a case he shall not be bound unless the statute is made by express words to extend to him, for which he cites both English and American authorities, and adds, that the people of the State being sovereign, have succeeded to the rights of the former sovereign, and that the people of the State are not bound by the general words in the Insolvent Law. People v. Herkimer, 4 Cow. [N.Y. 345], 348, see, also, Commonwealth v. Hutchinson, 10 Pa. 466, which is to the same effect; Hilliard, Bank (2d ed.), 295.
>
> "Sanctioned as that principle is by two express decisions of this court, it would seem that further discussion of it is unnecessary, as it has never been questioned by any well considered case, state or federal, and is founded in the presumption that the Legislature, if they intended to devest the sovereign power of any right, privilege, title or interest, would say so in express words; and where the Act contains no words to express such an intent, that it will be presumed that the intent does not exist."

See 39 Tex.Jur. p. 58 where it is stated that ordinary legislation is intended merely to regulate the acts and rights of individuals.

■ There, of course, could be no injustice and no pernicious discrimination in construing our statutes as being inapplicable to the United States. The principle supporting this statement is well stated by the New York Court of Appeals in New York Telephone Co. v. Siegel-Cooper Co.,

---

1. Arts. 4005, 4013, 6474, Vernon's Ann.Civ.St. and Art. 1654, Vernon's Ann.P.C.

202 N.Y. 502, 96 N.E. 109, 112, 36 L.R.A., N.S., 560, as follows:

"Moreover, the law against unreasonable discrimination rests on public policy. It is forbidden because it is opposed to the interest of the public, which requires that all should be treated alike under like circumstances. Discriminations, however, in favor of the public are not opposed to public policy, because they benefit the people generally by relieving them of part of their burdens. In the absence of legislation upon the subject, such discriminations cannot be held illegal, as matter of law, without overturning the foundation upon which the rule itself is built."

■ We do not rest our decision entirely upon the foregoing rules. In fact we rely more heavily upon the rule of departmental construction so often pressed upon us by the Attorney General. The substance of this rule is given in Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 273, 153 A.L.R. 1054, as follows:

"Texas Jurisprudence announces the rule with reference to contemporaneous construction of statutes as follows:

" 'The contemporaneous construction of an act by those who are charged with the duty of its enforcement—that is, executive and administrative officers and departments, as well as by the courts and the Legislature—is worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence. Although a contemporaneous or practical construction is not absolutely controlling, it has much persuasive force and is entitled to great weight in determining the meaning of an ambiguous or doubtful provision.' Vol. 39, p. 234, § 125.

" 'The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable.' Vol. 39, pp. 235, 236, § 126."

■■ The history of this matter, outlined herein, establishes to a certainty the doubtful meaning of our statutes as applied to the United States Government. In the absence of "compelling words" by the Legislature we do not consider it our duty to construe or apply these statutes, under this record, in such manner as to provoke serious questions of constitutionality.

The judgment of the trial court is affirmed.

Affirmed.