RAILROAD COMMISSION OF TEXAS ET AL v. UNITED STATES OF AMERICA ET AL.

No. A-5932. November 19, 1958.
(317 S.W. 2d Series 927)

*John Ben Shepperd,* Attorney General of Texas, *Mert Starnes,* Assistant Attorney General, for the Railroad Commission of Texas, *Phillip Robinson, Smith & Steakley,* and *Zollie C. Steakley,* of Austin, for Texas Motor Common Carriers, petitioners.

*James E. Kilday, E .Riggs McConnell,* of Washington, D. C., *Russell Wines,* of San Antonio,, for the United States, and *Wm. R. McDowell,* of Dallas, for the Railroads, respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

The broad question here is whether the United States government may bargain and enter into contracts with carriers for the transportation of its goods and personnel, wholly within the State of Texas, without regard to the rates fixed by the Texas Railroad Commission. Or stated differently, the question is whether the State, through its Railroad Commission, may regulate rates contracted for and charged by common carriers when they perform intrastate transportation services in Texas for agencies of the United States.

The question has recently been answered by the Supreme Court of the United States in *Public Utilities Commission of California v. United States,* 355 U.S. 534 (1958).[1] It declared unconstitutional a California statute which required that intrastate rates for the transportation of property of the federal government be approved by a California commission. The Court therefore necessarily held that the State did not have the power to regulate intrastate rates to be charged the United States. We are compelled to follow that decision.

The trial court and the Texas Court of Civil Appeals, for a different reason, and before the announcement of the above decision, reached the same result in the case before us. 290 S.W. 2d 699. We affirm their judgments.

This action was brought by the Texas and Pacific and other

---

1.—2 L. Ed. 2d 470, 78 Sup. Ct. 466, 26 U.S. Law Week 4140; noted 44 American Bar Ass'n Journal 470 (May 1958) and in 19 University of Pittsburgh Law Review 815 (1958).

railroads for a declaratory judgment as to the validity of an order of the Texas Railroad Commission. The Commission advised common carriers to discontinue the practice of assessing and collecting rates other than those prescribed by ·it for the intrastate shipment of goods and personnel of the federal government. The railroads and the United States, which intervened, attacked the order. The Attorney General and various motor carriers supported it.

The question had been the subject of several opinions by the Texas Attorneys General. The Railroad Commission first asked the Attorney General for an opinion in 1938. It was advised that carriers were free to contract with the federal government for intrastate transportation without regard to rates fixed by the Commission. To hold otherwise, the opinion said, would be to allow an undue interference with the exercise of constitutional functions by the United States.[2]

The Commission again asked for an opinion in 1940. It got the same answer.[3] The same basic question was asked again, in different form, by the Commission in 1943. The then Attorney General affirmed his former position.[4]

In 1955, the question again was presented to the Attorney General by the Commission. This time, after reviewing the opinions of the Supreme Court of the United States, the then Attorney General overruled the opinions of the former Attorneys General, and advised the Commission that the intrastate shipment of military supplies of the federal government by common carriers was subject to the regulation of the Commission.[5]

On the basis of this last opinion, the Commission on August 29, 1955, informed the carriers that they should discontinue the practice of assessing and collecting rates different from those prescribed by the Commission on intrastate federal shipments, and that rates prescribed by the Commission should be assessed and collected.

After an extended hearing, the trial court found:

2.—Opinion of April 13, 1938, addressed to Mr. C. R. McNamee, written for Attorney General McCraw by Albert G. Walker.

3.—Opinion 0-2954 written for Attorney General Mann by Glenn R. Lewis.

4.—Opinion 0-5256, written for Attorney General Mann by David W. Heath.

5.—Opinion S-165, written for Attorney General Shepperd by William W. Guild. These opinions are summarized in the opinion of the Court of Civil Appeals, 290 S.W. 2d at 700 et seq.

"1. That the statutes of the State of Texas, construed in the light of existing Federal law, do not prohibit the United States of America, in the exercise of its constitutional functions, from negotiating· and making arrangements for transportation of persons or property for the United States at fares and rates different from those prescribed by the Railroad· Commission of Texas.

"2. That the statutes of the State of Texas, construed in the light of existing Federal Law, do not prohibit the intrastate carriage or transportation of persons or property for the United States of America by common carrier at fares and rates different from those prescribed by the Railroad Commission of Texas, when the carriage and transportation is for the United States of America in the exercise of its constitutional functions."

The Court of Civil Appeals affirmed the trial court's judgment on the basis that the Texas statutes simply had not been written so as to include shipments by the federal government within the rate regulatory powers of the Commission. It therefore did not pass upon the Constitutional question which is: assuming that the statutes do apply to the federal government and its contracting carriers, is the order of the Railroad Commission in this case a valid one?

Oral arguments before this Court were postponed pending the decision of the Supreme Court of the United States in *Public Utilities Commission of California v. United States*. That opinion, which has now been rendered, is controlling here on the constitutional question.

That opinion relates that the statutes of California had previously authorized carriers to transport free, or at a reduced·rate, property for the United States. In 1955 the statutes were amended to provide that the California Commission "may permit" common carriers to transport property of the United States at reduced rates "to such extent and subject to such conditions as it [the Commission] may consider just and reasonable."

The majority opinion of the U.S. Supreme Court, written by Mr. Justice Douglas, struck down that statute. It states that the federal government has a comprehensive nationwide policy for the procurement of transportation services; that the Congress has delegated broad powers to its agencies in that regard; that the regulations of its various agencies, which have the

force of law, have prescribed how such contracts shall be negotiated and executed; and that the action of the State of California, in requiring state approval of such arrangements, was an interference with this policy. It emphasized that, particularly as to military personnel and supplies, the government must be able to move swiftly and without delay.

The opinion says:

"It seems clear that these [Federal] regulations * * * sanction the policy of negotiating rates for shipment of federal property and entrust the procurement officers with the discretion to determine when existing rates will be accepted and when negotiations for lower rates will be undertaken. It also seems clear that under the [California] Code, this discretion of the federal officers may be exercised and reduced rates used only if the Commission approves. The question is whether California may impose this restraint on federal transportation procurement."

The opinion continues:

"Here the conflict between the federal policy of negotiated rates and the state policy of regulation of negotiated rates seems to us to be clear. * * * The conflict seems to us to be as clear as any that the Supremacy Clause, Art. 6, cl. 2, of the Constitution was designed to resolve. As Chief Justice Marshall said in M'Culloch v. Maryland:

" 'It is of the very essence of supremacy to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence.'

"The seriousness of the impact of California's regulation on the action of federal procurement officials is dramatically shown by this record."

The dissenting opinion of Mr. Justice Harlan, joined by the Chief Justice and Mr. Justice Burton, cites many of the cases relied upon by Petitioners here and by the former Attorney General of Texas in overruling the opinions of his predecessors.[6] The foundation of that Attorney General's opinion and the sub-

---

6.—E.g., *Penn Dairies, Inc. v. Milk Control Commission,* 318 U.S. 261, and *Alabama v. King & Boozer,* 314 U.S. 1.

sequent action by the Texas Railroad Commission was thus taken away by the majority opinion in the California case.

The state and those parties allied with it argue that the California case is not controlling here because the basis for that holding was that the government's operations would be hampered by California procedure before its Commission whereas the government need not be hampered by the proceedings before the Texas Commission. The principle, however, is the same. The basic holding of that case is, as we understand it, that the federal government shall be free to act with regard to the rates it shall pay for the transportation of its goods in intrastate commerce as well as interstate commerce. The Texas Railroad Commission therefore, under the decision in the California case, was without constitutional authority to issue the order in question. We hold, as we must, that its order is void.

The judgments of the Court of Civil Appeals and district court are affirmed.

Opinion delivered November 19, 1958.